UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,

       Plaintiff,

v.                              Civil Action No. 09-1537 (PLF)

FEDERAL HOUSING FINANCE
AGENCY,

       Defendant.

## OPINION

This Freedom of Information Act matter is before the Court on the parties' cross motions for summary judgment.[1] Having carefully considered the parties' papers, the relevant case law and statutes, and the entire record in this case, the Court will grant defendant's motion for summary judgment and deny plaintiff's cross-motion for summary judgment.

## I. BACKGROUND

The Federal National Mortgage Association, known as Fannie Mae, and the Federal Home Loan Mortgage Company, or Freddie Mac (collectively, the "Enterprises"), are

---

[1] The papers before the Court in connection with this motion include: the Complaint for Declaratory and Injunctive Relief ("Compl."); Defendant's Motion for Summary Judgment ("Mot."); Defendant's Statement of Material Facts As to Which There Is No Genuine Dispute (attached to Mot.) ("SMF"); Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Partial Summary Judgment ("Cross Mot."); Plaintiff's Response to Defendant's Statement of Material Facts As to Which There Is No Genuine Dispute ("Response"); Defendant's Reply in Support of Summary Judgment and Opposition to Plaintiff's Cross-Motion for Partial Summary Judgment ("Def. Repl."); and Plaintiff's Reply in Support of Its Cross-Motion for Partial Summary Judgment ("Pl. Repl.").

publicly traded private corporations chartered by Congress. See 12 U.S.C. § 1723 (Fannie Mae); 12 U.S.C. § 1452 (Freddie Mac). Fannie Mae was created to provide a secondary market for residential loans guaranteed by the Federal Housing Administration and was congressionally chartered as a government sponsored enterprise in 1968. See Mot. At 2-3; SMF ¶¶ 1-2; see also Response ¶¶ 1-2. Freddie Mac was created in 1970 to provide competition for Fannie Mae and increase the availability of funds to finance mortgages. See SMF ¶¶ 1-2; see also Response ¶¶ 1-2.

In July of 2008, in response to the crisis in the housing and mortgage market, Congress passed the Housing and Economic Recovery Act of 2008 ("HERA"), creating the Federal Housing Finance Agency ("FHFA"). See Pub. L. No. 110-289, § 1101 (codified at 12 U.S.C. § 4511). The HERA granted the director of the FHFA conditional authority to place regulated entities, including Fannie Mae and Freddie Mac, into conservatorship and/or receivership "for the purpose of reorganizing, rehabilitating, or winding up [their] affairs." 12 U.S.C. § 4617(a); see also id. § 4616. On September 6, 2008, the Director of the FHFA placed the Enterprises under the FHFA's temporary conservatorship with the objective of stabilizing the institutions so that they could return to their normal business operations. See SMF ¶¶ 4-5; see also Response ¶¶ 4-5. In its capacity as conservator, the FHFA has "all rights, titles, powers, and privileges of [the Enterprises], and of any stockholder, officer or director of [the Enterprises] with respect to [the Enterprises] and [their] assets." See 12 U.S.C. § 4617(b)(2)(a)(i). In addition, the FHFA has "title to the books, records, and assets of any other legal custodian of" the Enterprises. See 12 U.S.C. § 4617(b)(2)(A)(ii).

Plaintiff Judicial Watch is a non-profit, educational organization whose stated mission is to promote integrity, transparency, and accountability in government. See Compl. ¶ 3.

On May 29, 2009, plaintiff sent a FOIA request to the FHFA, requesting "[a]ny and all Freddie Mac and/or Fannie Mae records concerning campaign contributions" and "[a]ny and all Fannie Mae and/or Freddie Mac records concerning policies, stipulations, and/or requirements concerning campaign contributions." See Compl. ¶ 5. On July 1, 2009, the FHFA responded to Judicial Watch's request, stating that although Fannie Mae might have the records that Judicial Watch was requesting, only the records of the FHFA were subject to a FOIA request. See SMF ¶ 9. The FHFA further replied that because Fannie Mae is a private company and the FOIA does not apply to documents for which an agency has not exercised its right of access, the documents are not agency records. The FHFA therefore was not required to provide the requested documents to Judicial Watch or to instruct the Enterprises to conduct searches in response to the FOIA request. Id.; see also Response ¶ 9. Judicial Watch appealed that decision. The FHFA denied the appeal on August 4, 2009. See SMF ¶ 10; see also Response ¶ 10.

On August 14, 2009, Judicial Watch filed the instant lawsuit, claiming that the FHFA "has violated FOIA by failing to produce any and all non-exempt records responsive to plaintiff's May 29, 2009 request." See Compl. ¶ 11. Judicial Watch requests: (1) a declaratory judgment that the defendant's failure to comply with the FOIA is unlawful; (2) an order requiring the defendant to search for and produce any and all non-exempt records and to create a Vaughn index of allegedly exempt records responsive to the request; (3) an injunction prohibiting the defendant from continuing to withhold any non-exempt records responsive to the request; and (4) an award of all attorneys' fees and other litigation costs reasonably incurred in this action. This matter is before the Court on the parties' cross-motions for summary judgment.

II. STANDARD OF REVIEW

The Court will grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits its own affidavits or declarations or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment. Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. United States Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In a FOIA case, the Court may award summary judgment solely on the basis of information provided in affidavits or declarations when the affidavits or declarations are "relatively detailed and nonconclusory," SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); see also Vaughn v. Rosen, 484 F.2d 820, 826 27 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974); Hertzberg v. Veneman, 273 F. Supp. 2d 67, 74 (D.D.C. 2003). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the

existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d at 1200 (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

III. DISCUSSION

The FOIA, 5 U.S.C. § 552, seeks "to open agency action to the light of public scrutiny," Dep't of Air Force v. Rose, 425 U.S. 352, 372 (1976), and to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." N.L.R.B. v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978). To further this end, "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." See 5 U.S.C. § 552(a)(3)(A). If an agency denies a FOIA request, a federal district court has the authority to enjoin the agency from withholding agency records and to order the production of any agency records upon a showing that: (1) the records are in fact agency records, (2) the records have been withheld, and (3) the withholding is improper. See 5 U.S.C. § 552(a)(4)(b); Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 150 (1980). It is the burden of the agency to show that one of the three elements is not met.

The central issue in this case is whether the requested documents are "agency records" within the meaning of the FOIA. See SMF ¶¶ 9, 11-17. Documents are considered agency records if two criteria are met: (1) the agency must either have created or obtained the records, and (2) the agency must be in control of the records at the time of the FOIA request. See U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 144-45 (1989); see also In Defense of Animals v. Nat'l Inst. of Health, 543 F. Supp. 2d 70, 76 (D.D.C. 2008); Washington Post v.

5

Dep't of Homeland Sec., 459 F. Supp. 2d 61, 68 (D.D.C. 2006). In the instant case, the Court is asked to determine a novel question concerning the scope of the FOIA with respect to the HERA, which transferred the "title to all books, records, and assets" from the Enterprises to the FHFA once the conservatorship was established.

### A. Were the Records Created or Obtained by an Agency?

There is no suggestion that the FHFA "created" the requested records. They were created by Freddie Mac and Fannie Mae before they were placed into conservatorship. The first prong of Tax Analysts is also satisfied, however, when an agency has "obtained" the records requested by an FOIA requester. "[T]he D.C. Circuit has made clear that records need not be generated by an agency, or [be] in the actual possession of an agency, for the records to be considered 'owned or obtained' by an agency." In Defense of Animals v. Nat'l Inst. of Health, 543 F. Supp. 2d at 77 (citing Burka v. U.S. Dep't of Health & Human Servs., 87 F.3d 508, 515 (D.C. Cir. 1996)). In its role as conservator, the FHFA has all rights, titles, powers and privileges of the Enterprises and title to their books, records, and assets. See 12 U.S.C. § 4617(b). The FHFA has the right to move, copy, and distribute the records. Id. And as Judge Kollar-Kotelly recently concluded, for FOIA purposes, once an agency gains ownership of records and has the ability to access them at any time, it has "obtained" them. See id. Because the FHFA now has title to the records and access to them, the Court concludes that it has "obtained" the records, thus satisfying the first prong of the test established in Tax Analysts.

### B. Does the FHFA Control the Records?

The second prong of Tax Analysts requires that the agency be in "control" of the requested records at the time the FOIA request is made. U.S. Dep't of Justice v. Tax Analysts,

492 U.S. at 145. In Tax Analysts, the Supreme Court explained that, "by control we mean the materials have come into the agency's possession in the legitimate conduct of its official business." Id. This circuit has employed a four factor test to determine the nature and extent of the control exercised by a governmental agency: "(1) the intent of the document's creator to [either] retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files." Burka v. U.S. Dep't of Health & Human Servs., 87 F.3d at 515 (quoting Tax Analysts v. Dep't of Justice, 845 F.2d 1060, 1069 (D.C. Cir. 1988)). See also Consumer Fed'n of America v. Dep't of Agriculture, 455 F.3d 283, 287 n.7 (D.C.Cir. 2006); United We Stand America, Inc. v. Internal Revenue Service, 359 F.3d 595, 599 (D.C. Cir. 2004); Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec., 527 F. Supp. 2d 76, 92 (D.D.C. 2007).

With regard to the first of these four factors, there is no explicit statement by anyone or other direct evidence in the record as to whether the documents' creators intended to retain or to relinquish control over the records. The Court finds it significant, however, that the boards of both Fannie Mae and Freddie Mac consented to the FHFA conservatorship knowing that the FHFA would obtain all rights, titles, powers and privileges of the Enterprises as well as legal title to their books, records, and assets. See Mot., Ex. 4, Statement of FHFA Director James B. Lockhart, Sept. 7, 2008, at 5-6; see 12 U.S.C. § 4617(b). Neither Congress nor the boards of the Enterprises excluded the records of the Enterprises at the time the conservatorship was established. Because the Enterprises knowingly gave up their records to the conservator, the Court concludes that they did not intend to retain control of them and in fact intended to

relinquish control.  The first factor therefore weighs in favor of the plaintiff.  See Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec., 527 F. Supp. 2d at 92-93.

As for the second factor, the government argues that the FHFA "does not enjoy the ability to use and dispose of the Enterprises' records as it sees fit" because "HERA restricts the Agency's ability to dispose of Enterprise records of which it takes possession."  Mot. at 13-14.  This contention is unconvincing, however, because the HERA does not in fact place any restrictions on the manner in which the FHFA uses the records of an entity in receivership; it merely provides that the FHFA in its role as receiver "may . . . preserve and conserve the assets and property of the regulated entity."  12 U.S.C. § 4617(b)(2)(B)(iv).  That broadly worded and permissive provision does not appear to limit in any manner the FHFA's power to use or dispose of the records of an entity in receivership.  See Def. Repl. at 11-12.  Indeed, the FHFA is virtually unrestricted in its use of the records.  As the conservator, the FHFA has the right to copy, distribute, or otherwise use the records.  See 12 U.S.C. § 4617(b).  It can thus "use the record[s] as it sees fit."  Burka v. U.S. Dep't of Health & Human Servs,, 87 F.3d at 515.  The Court therefore concludes that the second factor favors the plaintiff.

The third and fourth factors are of particular importance in this case.  See Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec., 527 F. Supp. 2d at 97 ("[A]n agency's actual use of a document is often more probative than the agency's subjective intent.").  With regard to the third factor, the declarations submitted by the defendant attest that the records requested by plaintiff, relating to the political contributions of the Enterprises, are not relevant to the supervisory mission of the FHFA and that, for that reason, no agency employees have read or relied on the requested records.  See Mot., Ex. 3, Declaration of David A. Felt, Jan.

29, 2010 ("Felt Decl."), ¶¶ 1, 10-13.  In addition, Mr. Felt attests that the requested records have not been collected by the agency or incorporated into the files of the agency.  Id.

With regard to the fourth factor, plaintiff argues that the requested records are a part of FHFA's files simply because the agency now is in possession of the records.  See Cross Mot. at 5 n. 2.  This analysis is overly simplistic.  If the records were automatically integrated into an agency's files once it came into possession of the records, the third and fourth factors of the test would be irrelevant.  Furthermore, the word "degree" mentioned by the court of appeals in its articulation of the fourth factor indicates quite clearly that there is a sliding scale with respect to the amount of integration into an agency's files.  See Burka v. U.S. Dep't of Health & Human Servs., 87 F.3d at 87.

In the Burka decision itself, the court of appeals considered whether data tapes related to a survey about smoking habits were "agency records" and subject to disclosure under the FOIA.  See Burka v. U.S. Dep't of Health & Human Servs., 87 F.3d at 511-12.  The National Institutes of Health ("NIH"), a federal agency, had initiated the project, but rather than collecting all of the data itself, the NIH contracted with Information Management Systems ("IMS"), a private entity.  Id.  After articulating the four-factor test, the court concluded that the data tapes were subject to the FOIA.  Id. at 515.  Among the factors that the court considered were the facts that the NIH:  (1) had ordered the creation of the materials; (2) planned to take possession of the tapes at the conclusion of the project; (3) had indicated that it would disclose the information after its publication schedule was completed; and (4) had read and significantly relied on the information in writing articles and developing agency policies.  Id.  None of these factors is present in the instant case.  The FHFA did not create the records; it plans to return the records to

9

the Enterprises once the conservatorship ends; and it has not read or relied on any of the records in its work. See Felt Decl. ¶¶ 1, 10-13.

In Consumer Fed'n of America v. Dep't of Agriculture, 455 F.3d at 285, the court of appeals was presented with the question of whether the electronic appointment calendars of six USDA officials were "agency records" within the meaning of the FOIA. All six of the calendars were created by USDA employees and were accessed and updated on a daily basis. Id. at 290. The calendars of the five most senior USDA officials were used to inform other staff members about their availability for meetings and meetings with other industry representatives. Id. at 291. In addition, these calendars were distributed to other employees within the agency rather than being retained solely for the convenience of the individual officials. Id. The calendar of the sixth official had been distributed only to his secretary and therefore was not "used" by the agency in the same way as the calendars of the other five officials. The court concluded that the calendars of the first five officials were subject to the FOIA and the calendar of the sixth official was not. Id. at 293. The records in the instant case have not been used, distributed, or incorporated into the FHFA's files in any way. See Felt Decl. ¶¶ 1, 10-13. Here, the degree of integration by the FHFA is non-existent. Both the third and the fourth factors of the test favor the FHFA's position.[2]

---

[2] The plaintiff relies on a line of cases involving the FDIC to show that courts have concluded that an agency has "exercised control" over records even when documents were not clearly integrated into the agency's files. See Cross Mot. at 6. In all of these cases, however, the FDIC did not contest the treatment of the records as subject to the FOIA. Instead, the FDIC released some of the documents and invoked various FOIA exemptions to withhold the rest of the documents. See Lepelletier v. FDIC, 164 F.3d 37, 39 (D.C. Cir. 1999); Nickelsberg v. FDIC, 640 F. Supp. 2d 55, 56 (D.D.C. 2009); Nadler v. FDIC, 899 F. Supp. 158, 159 (S.D.N.Y. 1995).

Furthermore, it appears that in those cases the FDIC actively made use of the records by reviewing the documents, integrating them into its files, and relying on the documents to determine which assets it owned and what legal rights it had in those assets. See Lepelletier v.

Based on the four factor <u>Burka</u> test, two factors favor the plaintiff, but the two most important factors favor the defendant. The strength of the third and fourth factors tips the scales in favor of the defendant. See e.g. <u>Consumer Fed'n of America v. Dep't of Agriculture</u>, 455 F.3d at 288 ("[U]se is the decisive factor here."); <u>Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec.</u>, 527 F. Supp. 2d at 97 ("[U]se trumps intent."); <u>Washington Post v. Dep't of Homeland Sec.</u>, 459 F. Supp. 2d at 72 (agency's use of records for an official agency function is determinative). Furthermore, because the records were created before the FHFA took over as conservator and the agency has not relied on them, they reveal little, if anything, about the structure or operation of the government agency, and their production therefore would not further the purposes of the FOIA. Because the Court finds that the four-factor test favors the defendant, it concludes that the FHFA is not in control of the records. As a result, under <u>United States Department of Justice v. Tax Analysts</u>, they are not agency records subject to the FOIA. Accordingly, the Court will grant defendant's motion for summary judgment and will deny plaintiff's motion for summary judgment. An Order consistent with this Opinion will issue this same day.

  SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: September 30, 2010

---

<u>FDIC</u>, 164 F.3d at 39; <u>Nickelsberg v. FDIC</u>, 640 F. Supp. 2d at 56; <u>Nadler v. FDIC</u>, 899 F. Supp. at 159. In this case, by contrast, there is no indication that the defendant has used the records, relied on them in any way, or plans to use any of them in the future. See Felt Decl. ¶¶ 1, 10-13.